IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

THERESA A. KIDD, RHONDA PEDEN,                      PLAINTIFFS
and LAURIE KESLER, individually
and on behalf of all others similarly
situated

v.                                              CIVIL NO. 1:19cv245-HSO-JCG

LOWE'S HOME CENTERS, LLC,
LOWE'S COMPANIES, INC., and
LOWE'S HIW, INC.                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANTS' MOTION [21] TO COMPEL INDIVIDUAL ARBITRATIONS AND STAY PROCEEDINGS PENDING COMPLETION OF ARBITRATIONS

BEFORE THE COURT is Defendants Lowe's Home Centers, LLC, Lowe's

Companies, Inc., and Lowe's HIW, Inc.'s (collectively "Defendants") Motion [21] to

Compel Individual Arbitrations and Stay Proceedings Pending Completion of

Arbitrations. Because the Court finds that there is a genuine dispute of material

fact as to whether or not a valid and binding arbitration agreement exists between

Defendants and Plaintiffs Theresa Kidd, Rhonda Peden, Laurie Kesler, Angele

Boudreax, Yanaima Cabreja Acosta, Lisa Springer, and Alexandria Etheridge, the

Court will deny Defendants' Motion [21] in part without prejudice. However,

because a valid and binding arbitration agreement covering these disputes exists

between Defendants and opt-in Plaintiffs Beth Yackel, Eva Hayden, Diane Schad,

Michelle Morris, Cynthia Rohrbach, Chris Spivey, Barbara Zavertnik, Elizabeth

1

Davis, Alicia Pelham, Sherry Peterson-Tennille, Portia Hudson, Paula Thompson, Julie Booth, Lisa Casabara, Lauren Paulaskas, Diane Kazan, Stacy Nolen, Hamid Mashayekh, Christy Farrelly, Maureen Wyer-Fletcher, Shelbi Paulk, and Cheryl Westerman, the Court will grant Defendants' Motion [21] in part as to these Plaintiffs and compel them to individually arbitrate their claims.

## I. BACKGROUND

### A. Procedural history

Plaintiffs Theresa A. Kidd, Rhonda Peden, and Laurie Kesler (collectively, "Named Plaintiffs") filed this Collective Action Complaint under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), on behalf of themselves and others similarly situated on April 17, 2019. Compl. [1] at 1. The Complaint asserts a single cause of action against Defendants for failing to pay overtime compensation to Plaintiffs in violation of the FLSA. *Id.* at 6. Specifically, Plaintiffs allege that Defendants misclassified them as exempt employees when they should have been classified as non-exempt employees, and that Defendants lacked a good faith basis for misclassifying them. *Id.* at 8. Plaintiffs further contend that during the time they were misclassified, they were required to work in excess of 40 hours per week without being compensated for overtime hours. *Id.* at 7.

During the time period relevant to this dispute, Defendants operated Lowe's Home Improvement Stores at various locations across the United States. Compl. [1] at 2. Plaintiff Theresa A. Kidd was employed as a Project Specialist – Interiors ("PSI") at a Lowe's Home Improvement Store in D'Iberville, Mississippi. *Id.* at 1.

Plaintiffs Rhonda Peden and Lauren Kesler were employed as PSIs at Lowe's Home Improvement Stores in Gulfport, Mississippi, and Gautier, Mississippi, respectively. *Id.* at 2. At the time Defendants' present Motion was filed, 26 other Plaintiffs had consented to join this collective action.[1] These individuals were employed by Defendants as PSIs at Lowe's Home Improvement Stores in the following locations: Covington, Louisiana; Metairie, Louisiana; Waveland, Mississippi; Pascagoula, Mississippi; Franklin, Tennessee; Collierville, Tennessee; Gallatin, Tennessee; Dickson, Tennessee; Henderson, Tennessee; Bartlett, Tennessee; Avondale, Pennsylvania; Hermitage, Pennsylvania; Chester, New York; Newburgh, New York; Anniston, Alabama; Hoover, Alabama; Fultondale, Alabama; Leeds, Alabama; Westminster, Colorado; Arvada, Colorado; Brighton, Colorado; Loveland, Colorado; Cheyenne, Wyoming; Tallahassee, Florida; and Durham, North Carolina. Long Decl. [21-2] at 6-8.

Defendants have filed a Motion to Compel Individual Arbitrations and Stay Proceedings Pending Completion of Arbitration, Mot. to Compel [21], to which Plaintiffs have responded, Resp. in Opp'n [32]. Defendants then filed a Reply. Defs.' Reply [38]. Pursuant to this Court's Order Directing the Parties to File Supplemental Briefing, Plaintiffs have also submitted Supplemental Declarations [51] from Plaintiffs Rhonda Peden, Theresa Kidd, and Beth Yackel and Defendants have also filed a Supplemental Brief [52], along with the Supplemental Declarations

---

[1] In the time since Defendants' Motion was filed 81 additional Plaintiffs have opted into this collective action. However, because Defendants' Motion does not address these 81 additional Plaintiffs' Agreements to Arbitrate Disputes, or lack thereof, they will not be addressed in this Order.

of Samantha Monds [52-1], Defendants' Specialty Operations Manager, and Jodi Long [52-2], Defendants' Director HR Field Operations.  Defendants' Motion asks the Court to order separate, individual arbitrations of the claims of each Plaintiff, and to stay this case pending the completion of those arbitrations.   Mot. to Compel [21].

B.      Factual background

        According to Samantha Monds, Defendants' Specialty Operations Manager, Lowe's Home Improvement Stores are divided into sales areas consisting of approximately 15 Regions.  Monds Decl. [38-1] at 4.  Each Region is overseen by a Regional Sales Director ("RSD") and is comprised of eight to eleven Districts.  *Id.*  A Market Sales Manager ("MSM") oversees each District.  *Id.*  PSIs report directly to the MSM for their District.  *Id.*  Named Plaintiffs and opt-in Plaintiffs Angele Boudreax, Yanaima Cabreja Acosta, Lisa Springer, and Alexandria Etheridge all worked as PSIs in District 876, which was part of Region 15.  *Id.* at 7; Villaluna Decl. [38-2] at 3-4; Long Suppl. Decl. [52-2] at 3-4.  Vince Villaluna[2] ("Villaluna") was the RSD for Region 15 and oversaw the MSMs of these Plaintiffs' District.  Villaluna Decl. [38-2] at 4.

1.      February 15, 2018 meetings

        On or about February 15, 2018, each District held a meeting[3] during which

---

[2] Plaintiffs refer to Vince Villaluna as Vince Villanueva and his position as the Regional Vice President of Sales for Lowe's "Region 15" Stores.  *See, e.g.,* Pl.'s Resp. [32] at 2.  Based on the signed declaration of Vince Villaluna included in the record, the Court will utilize Defendants' formulation of his name and position.  *See* Decl. of Vince Villaluna [38-2] at 1.

[3] Plaintiffs refer to this as a fiscal year marketing meeting, while Defendants describe it as a mandatory informational meeting.  The Court will refer to the events held on February 15, 2018, only as meetings.

PSIs were informed of changes to their compensation structure and were presented with a copy of a revised Commission Plan which included an Agreement to Arbitrate Disputes. Long Decl. [21-2] at 4; Monds Decl. [38-1] at 4. Defendants contend that these meetings were to be led by the MSM for each District. Monds Decl. [38-1] at 4. RSDs may have attended a District's meeting to provide support to the MSM leading it, but they were not required to attend. *Id.*

Prior to the meetings, each MSM was supplied with a PowerPoint presentation that they were required to use. *Id.* at 5. This presentation detailed the new compensation structure, identified the PSIs' next steps, including reviewing, signing, and returning the Agreement to Arbitrate Disputes by March 2, 2018, and informed the PSIs about a "resource page" available on the company's intranet site in the event that they needed additional information. *Id.*

Defendants assert that PSIs were not required to sign and return the Agreement to Arbitrate Disputes as a condition of continued employment and that PSIs who refused to sign the Agreement to Arbitrate Disputes would not and could not be terminated. *Id.* at 5-6. Although PSIs were told that they had until March 2, 2018, to return their signed Agreement to Arbitrate Disputes, Defendants continued to accept signed Agreements to Arbitrate Disputes after that date. *Id.* at 6. To support this position, Defendants refer to some 30 PSIs who refused to sign the Agreement to Arbitrate Disputes at the February 15, 2018, meeting and remained employed. *Id.* at 7. Four PSIs who never signed the Agreement to Arbitrate Disputes are still employed by Defendants in different positions. *Id.*

2.    <u>District 876 meeting</u>

Plaintiffs Theresa Kidd, Rhonda Peden, Laurie Kesler, Angele Boudreax, Yanaima Cabreja Acosta, Lisa Springer, and Alexandria Etheridge, who were each employed as PSIs by Defendants, all worked in District 876 and attended the meeting held on February 15, 2018, and received the foregoing documents.  Long Decl. [21-2] at 5-6; Long Suppl. Decl. [52-2] at 3-4.  They each signed the Commission Plan and the Agreement to Arbitrate Disputes on February 15, 2018.  Long Decl. [21-2] at 5-6.

The Named Plaintiffs contend that the circumstances surrounding their signing of the Commission Plan and the Agreement to Arbitrate Disputes were such that they did not freely and voluntarily sign these documents.  Pls.' Kidd, Peden, and Kesler Decl. [32-1] at 3, 6, 8.  Specifically, they claim that the District 876 meeting was led by Villaluna, who was a RSD, and not the MSM for that District, *id.* at 1, 4, 7, and that throughout the meeting, Villaluna focused on the potential increase in pay from these changes, *id.* at 2-3, 6, 8.  He discussed that PSIs were "very lucky" to be getting this new plan.  *Id.* at 2, 5.  Plaintiffs maintain that PSIs were instructed to sign the Commission Plan and return it to Villaluna before they left the meeting.  *Id.* at 2, 5-6, 8.  According to Plaintiffs, one PSI in attendance noticed the Agreement to Arbitrate Disputes and questioned Villaluna about what would occur if a PSI refused to sign it.  *Id.* at 2, 5, 8.  Villaluna allegedly responded that a PSI who refused to sign would have their employment terminated, and that there was no time to take the documents home to review them, as they needed to be

signed and returned during the meeting.  *Id.* at 2, 5, 8.

Plaintiffs Theresa Kidd, Rhonda Peden and Laurie Kesler contend that Villaluna avoided answering questions about the Agreement to Arbitrate Disputes and would "steer the conversation back to the idea that PSIs would now make more money with the Commission Plan." *Id.* at 2-3, 6, 8.  Further, they claim that no PSI was given a copy of the documents to take home for review or to place in their records, *id.* at 2, 5, and that PSIs had no ability to negotiate any of the terms and had to "take the agreement for what it was or face immediate termination," *id.* at 2, 6, 8.  Plaintiffs Theresa Kidd, Rhonda Peden and Laurie Kesler signed the documents because they could not afford to lose their jobs.  *Id.* at 3, 6, 8.  They state their belief that all of the PSIs who attended the District 876 meeting ultimately signed the Commission Plan.  Pls.' Resp. [32] at 4.

Defendants take a markedly different view of what occurred at the District 876 meeting.  *See* Defs.' Reply [38] at 4-5.  They contend that although Villaluna attended the meeting, it was led by the MSM for District 876, who utilized the PowerPoint presentation provided by Defendants.  Villaluna Decl. [38-2] at 4.  The MSM purportedly outlined the Commission Plan in detail and advised PSIs that they could return their signed documents to the Human Resources Manager assigned to their store by March 2, 2018, if they wished to participate in the Commission Plan.  *Id.*  No one required PSIs at the District 876 meeting to return a signed Commission Plan before leaving the meeting.  *Id.*  Defendants also maintain that PSIs who wanted additional time to review the documents were permitted to

take them home, and that one PSI at the District 876 meeting did in fact do so. *Id.*

Both parties have submitted signed declarations and other evidence supporting their respective versions of the events at the District 876 meeting.

3.   Opt-in Plaintiff Beth Yackel

Opt-in Plaintiff Beth Yackel ("Yackel") worked as a PSI for Defendants in District 1238 located in Loveland, Colorado. Yackel Decl. [51-2] at 1; Long Suppl. Decl. [52-2] at 4. She contends that on February 15, 2018, she and the other PSIs within her district attended a meeting led by the MSM for that district, Leeann Kimbrell ("Kimbrell"), and the Area Human Resource [sic] Manager, Chris Hernandez, among others. Yackel Decl. [51-2] at 1. It was her understanding that the meeting was called at the direction of the RSD for that region, Quincy Elliot. *Id.*

Yackel alleges that during this meeting, the Commission Plan and pay changes for PSIs for the upcoming fiscal year were discussed. *Id.* at 2. She claims that "[w]e were all asked to sign the paperwork put in front of us before we were allowed to leave th[e] meeting." *Id.* According to Yackel, when asked whether PSIs would be terminated if they refused to sign, Kimbrell did not answer the question. *Id.* Kimbrell allegedly told Yackel that there was no time to take the paperwork home or to review it with an attorney as it had to be signed at the meeting, but Yackel was told that she could take a copy of the signed paperwork to an attorney to review. *Id.* The terms of the agreement were purportedly nonnegotiable. *Id.* Yackel contends that she felt that she had to either sign or be terminated, so she

8

ultimately signed the documents because she could not afford to lose her job.  *Id.*  In

Yackel's area, she does not believe that there were any comparable jobs available.

*Id.*

4.    Defendants' position

Defendants contend that each of the 26 opt-in Plaintiffs, including Yackel,

entered into the same Agreement to Arbitrate Disputes as Named Plaintiffs, and

they have submitted copies of these Agreements for 20 of these individuals.  Long

Decl. [21-2]; Agreements L-W [21-3].  For the remaining Plaintiffs, Defendants

maintain that while they do not have a copy of these individuals' Agreements to

Arbitrate Disputes, the remaining opt-in Plaintiffs received additional

compensation under the Compensation Plan, and receipt of this compensation was

contingent upon signing both the Compensation Plan and Agreement to Arbitrate

Disputes.  *Id.*  For these reasons, Defendants surmise that these opt-in Plaintiffs

also signed the Agreement to Arbitrate Disputes.  *Id.*

Defendants further argue that at least 6 of the 26 opt-in Plaintiffs returned

their Agreement to Arbitrate Disputes after February 15, 2018.[4]  Monds Decl. [38-1]

at 7.  For example, opt-in Plaintiff Diane Schad signed the Agreement to Arbitrate

Disputes on February 27, 2018.  Long Decl. [21-2] at 83.  Opt-in Plaintiff Michelle

Morris signed the Agreement to Arbitrate Disputes on February 22, 2018,

Agreements L-W [21-3] at 20, while opt-in Plaintiff Cheryl Westerman signed on

---

[4] One of the Agreements to Arbitrate Disputes submitted by Defendants was signed after February 15, 2018, by a Suzanne Thompson.  Agreements L-W [21-3] at 44.  This individual has not opted into the present litigation.

February 23, 2018.  *Id.* at 86.  Opt-in Plaintiffs Chris Spivey, Cynthia Rohrbach[5], and Barbara Zavertnik signed the Agreement to Arbitrate Disputes in March 2018. *Id.* at 27; *Id.* at 35; *Id.* at 83.  Finally, opt-in Plaintiff Eva Hayden was hired by Defendants on or about June 15, 2018, and provided electronic acknowledgement that she accepted the terms and conditions of Defendants' offer of employment, including the Agreement to Arbitrate Disputes.  Long Decl. [21-2] at 6.

Plaintiffs assert only that they should not be bound by the Agreement to Arbitrate Disputes because of the procedural unconscionability of the District 876 meeting.  *See* Mem. in Opp'n.  With the exception of Yackel, those opt-in Plaintiffs who signed the agreement after February 15, 2018, or outside of the February 15, 2018, District 876 meeting have not asserted any defenses to the formation of the Agreements to Arbitrate Disputes each one of them signed.  While there is no dispute that Plaintiffs Theresa Kidd, Rhonda Peden, Laurie Kesler, Angele Boudreax, Yanaima Cabreja Acosta, Lisa Springer, and Alexandria Etheridge were present at the February 15, 2018, District 876 meeting, none of the other opt-in Plaintiffs who signed their Agreements to Arbitrate Disputes on February 15, 2018, did so at the District 876 meeting.  *See* Pls.' Suppl. Decl. [51-1] at 1-4; *see also* Long Suppl. Decl. [52-2] at 3-4.  With the exception of Yackel, Plaintiffs have not brought to the Court's attention the circumstances under which the remaining 21 opt-in Plaintiffs signed their Agreements to Arbitrate Disputes

---

[5] She added a notation above her signature that reads "I have been informed that my commission will be withheld if I do not sign."  Agreements L-W [21-3] at 27.

5.    <u>The Commission Plan and Agreement to Arbitrate Disputes</u>

The substance of the documents signed by all Plaintiffs is not in dispute.

Each copy of the Commission Plan and Agreement to Arbitrate Disputes contained

identical language and terms.  Defs.' Mem. in Suppl. [22] at 3.  To be eligible for the

Commission Plan[6] and the potential additional compensation available to PSIs, a

PSI first had to acknowledge that he or she had read and understood the Agreement

to Arbitrate Disputes and agreed to be bound by its terms.  *See* Commission Plan

[21-1] at 5.

Above the signature line, the Commission Plan stated the following:

> BY AGREEING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE
> READ AND UNDERSTAND THE AGREEMENT TO ARBITRATE
> DISPUTE [sic] ("AGREEMENT") AND AFFIRMATIVELY AGREE TO
> BE BOUND BY THE TERMS OF THE AGREEMENT.

*Id.*

Similarly, the following language appeared above the signature line on the

Agreement to Arbitrate Disputes:

> BY AGREEING BELOW, YOU ACKNOWLEDGE THAT YOU HAVE
> READ AND UNDERSTAND THE ABOVE PROVISIONS AND
> AFFIRMATIVELY AGREE TO BE BOUND BY THE TERMS OF THIS
> AGREEMENT TO ARBITRATE DISPUTES.

*Id.* at 7.

The Agreement to Arbitrate Disputes required that

> any controversy between you and Lowe's (including agents of Lowe's and
> any of Lowe's predecessors, including but not limited to Lowe's Home
> Centers, Inc. and Lowe's HIW, Inc.) arising out of your employment or

---

[6] The Commission Plan did not reclassify Plaintiffs as non-exempt employees, and Plaintiffs do not assert that the Commission Plan itself is at issue.  They only challenge the contemporaneously signed Agreement to Arbitrate Disputes.

the termination of your employment shall be settled by binding arbitration.

*Id.* at 6. The Agreement explicitly mentioned that it covered claims arising out of the FLSA. *Id.* Finally, it mandated that any arbitrations arising out of the Agreement would be individual in nature and stated that "to the extent permissible by law, there shall be no right or authority for any dispute to be arbitrated as a class action or collective action." *Id.* The Agreement also provided that Defendants would pay all filing fees and expenses except for the $150.00 filing fee for initiating arbitration. *Id.* Neither the Agreements to Arbitrate Disputes not the Commission Plan contained a choice of law provision.

## II. <u>DISCUSSION</u>

### A. <u>Legal standard</u>

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 through 307, provides that "a written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration" a controversy that arises from the agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. A court must grant a movant a stay where a party has commenced a suit "upon any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. To determine whether parties should be compelled to arbitrate a particular dispute a court must evaluate: (1) whether the parties agreed to arbitrate the dispute; and (2) whether any federal statute or policy renders the claims nonarbitrable. *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003).

In answering the first inquiry, the Court must ask: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (internal quotations omitted). When evaluating whether there is a valid agreement between the parties, courts apply "ordinary state-law principles that govern the formation of contracts." *Fleetwood Enterprises, Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir.), opinion supplemented on denial of reh'g, 303 F.3d 570 (5th Cir. 2002) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

B.   <u>Whether the parties agreed to arbitrate the dispute</u>

1.   <u>There are questions as to the validity of the Agreements to Arbitrate Disputes signed by some, but not all, Plaintiffs.</u>

a.   <u>Standard of review</u>

There is a factual dispute as to the validity of the formation of some of the Agreements to Arbitrate Disputes in this case. Namely, Plaintiffs Theresa Kidd, Rhonda Peden and Laurie Kesler claim that although they did sign the Agreement, they did not do so freely or voluntarily. Pls.' Resp. [32] at 2; Pls.' Kidd, Peden, and Kesler Decl. [32-1] at 3, 6, 8. They also present evidence which they contend brings into question the conscionability of the circumstances under which opt-in Plaintiffs Angele Boudreax, Yanaima Cabreja Acosta, Lisa Springer, Alexandria Etheridge, and Beth Yackel signed their Agreements to Arbitrate Disputes. *See* Pls.' Suppl. Decl. [51-1] at 1-4.

The FAA provides that "[i]f the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed

summarily to the trial thereof." 9 U.S.C. § 4. The Fifth Circuit has not explicitly addressed the question of what standard district courts should employ when a factual dispute arises over whether the parties voluntarily entered into an arbitration agreement. Other Circuit Courts of Appeals have utilized a summary judgment standard, "compelling arbitration only where there is 'no genuine issue of fact concerning the formation of the agreement' to arbitrate." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 159 (3d Cir. 2009); *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir. 2008); *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785-86 (11th Cir. 2008); *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003); *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002); *Gibson v. Wal-Mart Stores, Inc.*, 181 F.3d 1163, 1166 (10th Cir. 1999). District courts in this Circuit have also adopted this approach. *See Jackson v. Royal Caribbean Cruises, Ltd.*, 389 F. Supp. 3d 431, 444 (N.D. Tex. 2019); *Grant v. House of Blues New Orleans Restaurant Corp.*, No. CIV.A. 10-3161, 2011 WL 1596207, at *4 (E.D. La. Apr. 27, 2011). This standard was found to be appropriate "because the district court's order compelling arbitration is in effect a summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate." *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 528 (3rd Cir. 2009) (quotation omitted); *Aliron Int'l, Inc.*, 531 F.3d at 865 (quotation omitted); *Magnolia Capital Advisors, Inc.*, 272 F. App'x at 785-86 (quotation omitted); *Jackson*, 389 F. Supp. 3d at 443-44 (quotation omitted); *Grant*, 2011 WL 1596207, at *3 (quotation omitted);

*see Bensadoun*, 316 F.3d at 175; *see also Tinder*, 305 F.3d at 735.

Under the summary judgment standard, the "party seeking to stay the case in favor of arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made . . . This burden does not require the moving party to show initially that the agreement would be enforceable, merely that one existed." *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010) (citations omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant carries this burden, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

To rebut the initial showing of the validity of an agreement to arbitrate, the opposing party would have to show, with "significant probative evidence," that there exists a genuine issue of material fact. *See Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A genuine dispute of material fact means that evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quotation omitted). If the evidence is merely colorable, or is not significantly probative, finding the existence of a valid agreement would be appropriate. *See Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). In

deciding whether an agreement to arbitrate was formed, the Court views facts and inferences in the light most favorable to the nonmoving party. *See RSR Corp.*, 612 F.3d at 858.

> b. Plaintiffs[7] who attended the District 876 meeting have shown that there is a genuine dispute of material fact regarding whether they voluntarily signed the Agreement.

Under Mississippi law,[8] an enforceable contract consists of an offer, an acceptance of that offer, and consideration. *Estate of Davis v. O'Neill*, 42 So. 3d 520, 527 (Miss. 2010). In order for a contract to be valid and enforceable, six elements must be present:

> (1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation.

*Id.* (internal quotations omitted).

Mississippi law places upon parties to a contract an inherent duty to read the terms of a contract prior to signing. *MS Credit Ctr., Inc. v. Horton*, 926 So. 2d 167, 177 (Miss. 2006). A party cannot avoid a written contract because they failed to become familiar with the terms and conditions, read it, or have someone else read and explain it to them. *Id.* Duties to disclose or to act affirmatively by explaining the terms of a contract only arise in fiduciary or confidential relationships, not in an

---

[7] Specifically, Plaintiffs Theresa Kidd, Rhonda Peden, Laurie Kesler, Angele Boudreax, Yanaima Cabreja Acosta, Lisa Springer and Alexandria Etheridge. Pls.' Suppl. Decls. [51-1] at 1-4; Long Suppl. Decl. [52-2] at 3-4.

[8] While opt-in Plaintiffs Lisa Springer and Alexandria Etheridge worked in Louisiana, Long Decl. [21-2] at 7-8, no party has asserted that Louisiana law should apply. Thus, the Court will apply Mississippi law.

ordinary arms-length transaction.  *Id.*

The only defense Plaintiffs raise to formation of the Agreement to Arbitrate

Disputes in this case is that it was procedurally unconscionable.  Pls.' Resp. [32] at

4.  Specifically, Named Plaintiffs Theresa Kidd, Rhonda Peden, and Laurie Kesler

allege that they signed their Agreements under procedurally unconscionable

conditions because their time to review the documents at the District 876 meeting

was limited, Pls.' Kidd, Peden, and Kesler Decl. [32-1] at 2, 5, 8; they did not

understand the Agreement, *id.* at 2, 5-6, 8; they could not take them home to

review, *id.* at 2, 5, 8; and they thought, based upon Villaluna's statements at the

meeting, that they would be terminated if they refused to sign, *id.* at 2-3, 5-6, 8.

Viewing these facts in the light most favorable to Plaintiffs, those of the opt-in

Plaintiffs who were also present at the District 876 meeting, namely Angele

Boudreax, Yanaima Cabreja Acosta, Lisa Springer, and Alexandria Etheridge, were

likewise only given a limited time to review the Agreement to Arbitrate Disputes,

could not take it home to review it, and were told that they would be terminated if

they refused to sign the agreement at the meeting.  *See* Pls.' Suppl. Decls. [51-1] at

1-4.  When a party raises procedural unconscionability as a defense, this implicates

the validity of the formation of the contract.  *Bowles v. OneMain Fin. Grp., L.L.C.*,

927 F.3d 878, 884 (5th Cir. 2019).

Unconscionability "has been defined as an absence of meaningful choice on

the part of one of the parties."  *Caplin Enters., Inc. v. Arrington*, 145 So. 3d 608, 614

(Miss. 2014).  Two kinds of unconscionability are recognized under Mississippi law:

procedural and substantive. *Id.* A plaintiff need only show one kind of unconscionability to invalidate a contract. *See E. Ford, Inc. v. Taylor*, 826 So. 2d 709, 717 (Miss. 2002) (finding it unnecessary to address substantive unconscionability where a plaintiff had demonstrated that an arbitration agreement was procedurally unconscionable). Plaintiffs here assert only procedural unconscionability. Pls.' Resp. [32] at 4. Procedural unconscionability looks beyond the substantive terms which specifically define a contract and focuses on the circumstances surrounding a contract's formation. *Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 517 (Miss. 2005), overruled on other grounds by *Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695 (Miss. 2009). Procedural unconscionability can be shown by:

> (1) lack of knowledge; (2) lack of voluntariness; (3) inconspicuous print; (4) the use of complex, legalistic language; (5) disparity in sophistication or bargaining power of the parties; and/or (6) lack of opportunity to study the contract and inquire about the terms.

*Caplin Enters., Inc.*, 145 So. 3d at 614.

A lack of knowledge is demonstrated by "a lack of understanding of the contract terms arising from inconspicuous print or the use of complex, legalistic language, disparity in sophistication of parties, and lack of opportunity to study the contract and inquire about contract terms." *Norwest Fin. Miss., Inc. v. McDonald*, 905 So. 2d 1187, 1193 (Miss. 2005). "A lack of voluntariness is demonstrated in contracts of adhesion when there is a great imbalance in the parties' relative bargaining power, the stronger party's terms are unnegotiable, and the weaker party is prevented by market factors, timing or other pressures from being able to

contract with another party on more favorable terms or to refrain from contracting at all." *Id.*

Plaintiffs do not argue that the Agreement to Arbitrate Disputes contained inconspicuous print or used complex, legalistic language. Instead they assert that considering the other factors and viewing the facts in the light most favorable to them, PSIs at the District 876 meeting were only given a short time to review the Commission Plan, Pls.' Kidd, Peden, and Kesler Decl. [32-1] at 2, 5, 8; Named Plaintiffs were not fully aware of the terms of the Agreement to Arbitrate Disputes, *id.* at 2, 5-6, 8; they were not permitted to take them home to review or consult with an attorney, *id.* at 2, 5, 8; they signed under threat of termination, *id.* at 2-3, 5-6, 8; and the contract was one of adhesion, Pls.' Resp. [32] at 6-8.

While those of the opt-in Plaintiffs who were at the District 876 meeting have not submitted affidavits asserting that they were not fully aware of the terms, a lack of knowledge can be demonstrated by showing disparity in sophistication of parties and lack of opportunity to study the contract and inquire about contract terms. *See Norwest Fin. Miss., Inc.*, 905 So. 2d at 1193. Similarly, while the opt-in Plaintiffs who worked in District 876 have not stated that they involuntarily signed the contract, the circumstances surrounding the signing can demonstrate a lack of voluntariness where the contract is one of adhesion, "there is a great imbalance in the parties' relative bargaining power, the stronger party's terms are unnegotiable, and the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain

from contracting at all." *Id.*

If Plaintiffs Theresa Kidd, Rhonda Peden, and Laurie Kesler simply asserted that they were not fully aware of the terms of the Agreement to Arbitrate Disputes because they did not take the time to read them, this would be insufficient to avoid arbitration. Plaintiffs argue that they thought the Agreement to Arbitrate Disputes pertained only to those disputes related to the Commission Plan, not all disputes, and that Defendants never informed them of these consequences. Mem. in Opp'n [32] at 7. They also assert that their lack of awareness was due to many of the other procedural unconscionability factors. *Id.* at 6. Specifically, Named Plaintiffs assert that they did not knowingly and voluntarily sign the Agreement to Arbitrate Disputes because it was a contract of adhesion. *Id.* at 7.

"A contract of adhesion has been described as one that is 'drafted unilaterally by the dominant party and then presented on a "take-it-or-leave-it" basis as to the weaker party who has no real opportunity to bargain about the terms.'" *MS Credit Ctr., Inc.*, 926 So. 2d at 178 (quoting *E. Ford, Inc.*, 826 So. 2d at 716).

> [T]he fact that an arbitration agreement is included in a contract of adhesion renders the agreement procedurally unconscionable only where the stronger party's terms are unnegotiable and the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all.

*E. Ford, Inc.*, 826 So. 2d at 716 (internal quotations omitted).

A contract of adhesion can become procedurally unconscionable when coupled with factors such as time pressure and other market factors preventing a party from being able to negotiate or seek out an alternative contract. *Id.*

Named Plaintiffs Theresa Kidd, Rhonda Peden, and Laurie Kesler allege that at the February 15, 2018, District 876 meeting, Villaluna told them that those PSIs who did not sign the Commission Plan would be immediately terminated, Pls.' Kidd, Peden, and Kesler Decl. [32-1] at 2, 5, 8, and that there was no opportunity for them to negotiate the terms of the arrangement, *id.* at 3, 6, 8. If Named Plaintiffs did not agree with the Agreement to Arbitrate Disputes as presented, they would not remain employed with Defendants. *Id.* at 2, 5, 8. Named Plaintiffs also assert that based on market forces, they could not leave and seek other employment as there was no competitor in the region with a comparable position available. Pls.' Kidd, Peden, and Kesler Decl. [32-1] at 3, 6, 9. Further, Named Plaintiffs were required to sign the Agreement to Arbitrate Disputes prior to leaving the meeting, placing them under significant time pressure. *Id.* at 2, 5, 8. They further aver that opt-in Plaintiffs Lisa Springer, Alexandria Etheridge, Yanaima Cabreja Acosta, and Angele Boudreax attended the meeting where these events occurred. Pls.' Suppl. Decls. [51-1] at 1-4.

The facts, as Named Plaintiffs allege them, create a genuine issue of material fact as to whether the Agreement to Arbitrate Disputes was signed under procedurally unconscionable circumstances. Viewing these facts in the light most favorable to Plaintiffs Theresa Kidd, Rhonda Peden, Laurie Kesler, Angele Boudreax, Yanaima Cabreja Acosta, Lisa Springer, and Alexandria Etheridge, as the non-moving parties, they have plausibly alleged that there was a lack of mutual assent, that they did not sign the Agreements voluntarily, that there was a

disparity in sophistication or bargaining power between the parties, and that they lacked the opportunity to study the contract and inquire about its terms. As such, these Plaintiffs have presented sufficient evidence to create a genuine dispute of material fact concerning the valid formation of their Agreement to Arbitrate Disputes.

There is clearly a dispute regarding what occurred at the District 876 meeting, and Defendants challenge Plaintiffs' characterization of events. Defs.' Reply [38] at 4. Plaintiffs and Defendants have submitted sworn declarations and evidence describing very different circumstances. If Plaintiffs' characterization of the events surrounding the signing of the Agreement to Arbitrate Disputes is true, there was not a "meeting of the minds" concerning the formation of the Agreement under Mississippi law. If Defendants are correct, then the formation of the Agreement to Arbitrate Disputes was valid. At this stage of the proceedings, however, compelling arbitration of those who attended the February 15, 2018, District 876 meeting would not be appropriate, as genuine disputes of material fact exist regarding whether a valid Agreement to Arbitrate Disputes was formed as to those Plaintiffs who attended the meeting.

c.    <u>Opt-in Plaintiff Beth Yackel's Agreement to Arbitrate Disputes</u>

Opt-in Plaintiff Beth Yackel ("Yackel") worked as a PSI for Defendants in District 1238 in Loveland, Colorado. Yackel Decl. [51-2] at 1; Long Suppl. Decl. [52-2] at 4. Plaintiffs have not briefed what law should apply to the analysis of Yackel's contract. Because it appears undisputed that Yackel worked and signed the

Agreement in Colorado, the Court finds that Colorado law should govern its inquiry into the presence of a material fact question regarding whether Yackel's Agreement to Arbitrate Disputes was signed under unconscionable conditions.

Under Colorado law, "[a] party asserting that a contract is unconscionable *must* prove both procedural and substantive unconscionability."[9] *Bailey v. Lincoln Gen. Ins. Co.*, 255 P.3d 1039, 1055 (Colo. 2011) (emphasis added). Courts evaluate several factors to determine if a contract is unconscionable: (1) a standardized agreement executed by parties of unequal bargaining strength; (2) lack of opportunity to read or become familiar with the document before signing it; (3) use of fine print in the portion of the contract containing the provision; (4) absence of evidence that the provision was commercially reasonable or should reasonably have been anticipated; (5) the terms of the contract, including substantive unfairness; (6) the relationship of the parties, including factors of assent, unfair surprise and notice; and (7) all the circumstances surrounding the formation of the contract, including its commercial setting, purpose and effect. *Id.* However, even if some the procedural elements are present, the Supreme Court of Colorado has made clear that "a contractual provision may only be held unconscionable so long as the provision is in some way substantively unconscionable." *Id.* at 1056 n. 11.

Yackel has not asserted that, or explained how, the Agreement to Arbitrate Disputes was unconscionable in substance. Her defenses instead stem only from

---

[9] This does not seem to apply to cases where the contract is void because it conflicts with public policy. *Bailey*, 255 P.3d at 1055 n. 10. Yackel has not asserted that the Agreement to Arbitrate Disputes conflicts with public policy.

the circumstances under which she was required to sign the contract.  *See* Yackel

Decl. [51-2].  Namely, she argues that she did not have sufficient time to review the

Agreement to Arbitrate Disputes, that Kimbrell did not answer her questions

regarding termination, that she was not permitted to take the paperwork home to

review it with an attorney, that the terms were nonnegotiable, and that she felt

compelled to sign in part because there were no other comparable jobs in the area.

*Id.* at 1-2.  None of Yackel's assertions challenge the substantive conscionability of

the terms of the Agreement to Arbitrate Disputes.  Because of this, Yackel has not

shown under Colorado law that a genuine dispute of material fact exists as to

whether her Agreement to Arbitrate Disputes was valid.

    d.    <u>Additional opt-in Plaintiffs' Agreements to Arbitrate Disputes</u>

As to the remaining 21 opt-in Plaintiffs, who were not present at the District

876 meeting and have not brought into question the circumstances under which

they signed the Agreement to Arbitrate Disputes, the Fifth Circuit has held in a

different context that

> if there is a genuine dispute as to the existence or validity of an
> arbitration agreement, an employer that seeks to avoid a collective
> action, as to a particular employee, has the burden to show, by a
> preponderance of the evidence, the existence of a valid arbitration
> agreement for that employee.

*In re JPMorgan Chase & Co.*, 916 F.3d 494, 502-03 (5th Cir. 2019) (discussing when

a district court may provide notice to potential plaintiffs of FLSA claims when they

have signed an arbitration agreement).

On the present record, those Plaintiffs who attended the District 876 meeting

have shown a genuine dispute as to the existence of the Agreement to Arbitrate Disputes. However, Plaintiffs have not done so for the remainder of the opt-in Plaintiffs who did not attend the District 876 meeting or who did not sign their agreements at the meeting. Defendants have submitted evidence of Agreements to Arbitrate Disputes signed by 21 opt-in Plaintiffs, none of whom signed their Agreements during District 876 meeting or otherwise brought the conscionability of the circumstances under which they signed into question.

Opt-in Plaintiffs Eva Hayden, Long Decl. [21-2] at 6; Diane Schad, *id.* at 83; Michelle Morris, Agreements L-W [21-3] at 20; Cynthia Rohrbach, *id.* at 27; Chris Spivey, *id.* at 35; Barbara Zavertnik, *id.* at 83; Cheryl Westerman, *id.* at 86, signed their Agreements to Arbitrate Disputes after February 15, 2018. It is clear that these Plaintiffs also did not sign their Agreements to Arbitrate Disputes at the District 876 meeting on February 15, 2018, and these seven Plaintiffs have not raised any other defenses to the formation of the Agreement to Arbitrate Disputes.[10]

Plaintiffs' Supplemental Declarations lists four of the opt-in Plaintiffs at issue in the instant Motion who were present at the District 876 meeting: Angele Boudreax, Yanaima Cabreja Acosta, Lisa Springer, and Alexandria Etheridge. Pls.' Suppl. Decls. [51-1] at 1-2. It also raises a defense to the formation of opt-in Plaintiff Beth Yackel's Agreement to Arbitrate Disputes.[11] However, as to the

---

[10] Peden contends that Plaintiff Eva Hayden told her that she was required to sign the paper prior to beginning her employment. Suppl. Decls. [51-1] at 2. While this may be true, it is not enough by itself to show that the Agreement to Arbitrate Disputes was signed under procedurally unconscionable terms.

[11] As the Court previously discussed, Yackel's defense ultimately does not create a genuine dispute of material fact exists as to whether her Agreement to Arbitrate Disputes was valid. *Supra* II(B)(1)(c) at 21-22.

remaining opt-in Plaintiffs, Eva Hayden, Diane Schad, Michelle Morris, Cynthia Rohrbach, Chris Spivey, Barbara Zavertnik, Cheryl Westerman, Elizabeth Davis, Alicia Pelham, Sherry Peterson-Tennille, Portia Hudson, Paula Thompson, Julie Booth, Lisa Casabara, Lauren Paulaskas, Diane Kazan, Stacy Nolen, Hamid Mashayekh, Christy Farrelly, Maureen Wyer-Fletcher, and Shelbi Paulkor, there has been no other defense raised to the formation of their Agreement to Arbitrate Disputes and it is apparently not disputed that they did not attend the February 15, 2018, District 876 meeting. Indeed, Plaintiffs' Supplemental Declarations make it clear that these Plaintiffs were not present at that meeting. *See* Pls.' Suppl. Decls. [51-1].

As such, Defendants have shown by a preponderance of the evidence that a valid Agreement to Arbitrate Disputes exists as to opt-in Plaintiffs Eva Hayden, Diane Schad, Michelle Morris, Cynthia Rohrbach, Chris Spivey, Barbara Zavertnik, Cheryl Westerman, Elizabeth Davis, Alicia Pelham, Sherry Peterson-Tennille, Portia Hudson, Paula Thompson, Julie Booth, Lisa Casabara, Lauren Paulaskas, Diane Kazan, Stacy Nolen, Hamid Mashayekh, Christy Farrelly, Maureen Wyer-Fletcher, and Shelbi Paulkor, as well as Plaintiff Beth Yackel.

2. <u>FLSA collective actions fall within the scope of the Agreement to Arbitrate Disputes.</u>

The next question the Court must address as to those Plaintiffs who did sign a valid Agreement is whether this dispute falls within the scope of the Agreement to Arbitrate Disputes, and whether it precludes a FLSA collective action.

Courts "resolve doubts concerning the scope of coverage of an arbitration

clause in favor of arbitration." *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998). "[A]rbitration should not be denied 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Id.* (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)) (internal citations omitted).

Here, the relevant arbitration clause encompasses "any controversy between you and Lowe's . . . arising out of your employment or the termination of your employment . . ." Commission Plan & Agreement to Arbitrate Disputes [21-1] at 6. It also specifically states that the Agreement was "intended to be broad and to cover, to the extent otherwise permitted by law, all such disputes between you and Lowe's including but not limited to those arising out of federal and state statutes and local ordinances such as . . . the Fair Labor Standards Act." *Id.* It also noted that "[t]o the extent permissible by law, there shall be no right or authority for any dispute to be arbitrated as a class action or collective action." *Id.*

The Complaint in this case asserts a single cause of action against Defendants for failing to pay overtime compensation to PSIs in violation of the FLSA. Compl. [1] at 6. The United States Supreme Court has held that a collective action scheme that is identical to the FLSA does not prohibit individualized arbitration proceedings. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1617 (2018) (explaining that the plaintiffs probably did not argue that the FLSA displaces the Federal Arbitration Act because the Supreme Court has held in *Gilmer v.*

27

*Interstate/Johnson Lane Corp.*, 500 U.S. 20, 32 (1991), that individual arbitration was not barred by the ADEA's collective action provision and that ADEA collective action scheme was "identical" to the FLSA). The Fifth Circuit has interpreted *Epic Systems* as requiring courts to enforce arbitration agreements that waive collective-action procedures for employees. *In re JPMorgan Chase & Co.*, 916 F.3d 494, 504 (5th Cir. 2019). Thus, it was permissible for this arbitration agreement to cover a FLSA collective action.

The dispute in this case clearly falls within the scope of the Agreement to Arbitrate Disputes, which expressly covers FLSA collective action claims. Opt-in Plaintiffs Beth Yackel, Eva Hayden, Diane Schad, Michelle Morris, Cynthia Rohrbach, Chris Spivey, Barbara Zavertnik, Cheryl Westerman, Elizabeth Davis, Alicia Pelham, Sherry Peterson-Tennille, Portia Hudson, Paula Thompson, Julie Booth, Lisa Casabara, Lauren Paulaskas, Diane Kazan, Stacy Nolen, Hamid Mashayekh, Christy Farrelly, Maureen Wyer-Fletcher, and Shelbi Paulkor have validly agreed to individually arbitrate disputes between themselves and Defendants arising out of the FLSA, and the claims they are raising in this case fall within the scope of the arbitration agreement.

C.    <u>There is no statute or policy rendering Plaintiffs' FLSA claims nonarbitable.</u>

To determine whether these opt-in Plaintiffs should be compelled to arbitrate this dispute, the Court must also ask "whether any federal statute or policy renders the claims nonarbitable." *Will-Drill Res., Inc.*, 352 F.3d at 214.

There is no federal statute or policy of which the Court is aware, nor have the

parties identified one, that renders FLSA claims nonarbitable.  Thus, opt-in

Plaintiffs Beth Yackel, Eva Hayden, Diane Schad, Michelle Morris, Cynthia

Rohrbach, Chris Spivey, Barbara Zavertnik, Cheryl Westerman, Elizabeth Davis,

Alicia Pelham, Sherry Peterson-Tennille, Portia Hudson, Paula Thompson, Julie

Booth, Lisa Casabara, Lauren Paulaskas, Diane Kazan, Stacy Nolen, Hamid

Mashayekh, Christy Farrelly, Maureen Wyer-Fletcher, and Shelbi Paulkor should

be compelled to individually arbitrate their disputes for overtime compensation.

### III. CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendants

Lowe's Home Centers, LLC, Lowe's Companies, Inc., and Lowe's HIW, Inc.'s Motion

[21] to Compel Individual Arbitrations and Stay Proceedings Pending Completion of

Arbitration is **DENIED IN PART WITHOUT PREJUDICE** as to Plaintiffs

Theresa Kidd, Rhonda Peden, Laurie Kesler, Angele Boudreax, Yanaima Cabreja

Acosta, Lisa Springer, and Alexandria Etheridge.  The Court will proceed to a

summary trial confined solely to the question of whether or not these Plaintiffs

entered into a valid agreement with Defendants, in accordance with 9 U.S.C. § 4.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, Defendants Lowe's

Home Centers, LLC, Lowe's Companies, Inc., and Lowe's HIW, Inc.'s Motion [21] to

Compel Individual Arbitrations and Stay Proceedings Pending Completion of

Arbitration is **GRANTED IN PART** as to opt-in Plaintiffs Beth Yackel, Eva

Hayden, Diane Schad, Michelle Morris, Cynthia Rohrbach, Chris Spivey, Barbara

Zavertnik, Cheryl Westerman, Elizabeth Davis, Alicia Pelham, Sherry Peterson-

Tennille, Portia Hudson, Paula Thompson, Julie Booth, Lisa Casabara, Lauren Paulaskas, Diane Kazan, Stacy Nolen, Hamid Mashayekh, Christy Farrelly, Maureen Wyer-Fletcher, and Shelbi Paulkor. These 22 opt-in Plaintiffs' claims are subject to binding, individual arbitrations and they are hereby **ORDERED** to submit their claims to individual arbitrations.

**SO ORDERED AND ADJUDGED**, this the 27th day of March, 2020.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE